UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

RASHIEK AMOND HARRIS,                )
                                     )
            Petitioner,              )
                                     )
     v.                              )    Case No. 1:22-cv-00049-SNLJ
                                     )
UNITED STATES OF AMERICA,            )
                                     )
            Respondent.              )

**MEMORANDUM AND ORDER**

On April 18, 2022, Petitioner Rasheik Amond Harris ("Harris") filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. This Court then ordered the United States to show cause why the relief requested in Hudson's motion should not be granted. Based on the reasons set forth below, this Court will dismiss Hudson's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

**I.    PROCEDURAL HISTORY**

On March 9, 2017, Sikeston Department of Public Safety Captain Andrew Cooper observed Rashiek Harris driving his girlfriend's vehicle in Sikeston. Trial Tr., Vol. I, p. 86. Cooper had known Harris since he was a juvenile and was aware that Harris's driver's license was suspended. Trial Tr., Vol. I, p. 87. Cooper followed Harris briefly while waiting for confirmation from the dispatcher on Harris's license status, and parked at the curb when Harris pulled into a driveway. *Id*.

Cooper approached the driver's door to speak with Harris and was followed shortly

by other officers including Detective Mario Whitney. Trial Tr., Vol. I, p. 88) The officers confirmed that Harris's license was suspended and Harris was asked to step out of the vehicle. *Id*. When Harris went to get out of the vehicle, Detective Whitley observed a loaded revolver in the driver's side door pocket of the vehicle. Trial Tr., Vol. I, p. 88, 98, 110. Harris's girlfriend, who owned the vehicle, gave officers consent to search, and they located an amount of methamphetamine and a small amount of what they suspected to be crack cocaine. Trial Tr., Vol. I, p. 99, 105, 110, 114. The substance field tested for cocaine, but was later demonstrated to be heroin at the Crime Lab. Trial Tr., Vol. I, p. 100. Harris initially denied knowing anything about the drugs, but ultimately admitted that the drugs were his during a videotaped interview. Trial Tr., Vol. I, p. 120-122.

Harris was charged by Indictment on May 18, 2017, with one count of possession of fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of Title 21, United States Code, Section 841(a)(1), and one count of being a felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1). Doc. 1, 1:17-cr-00044-SNLJ.

After losing pretrial motions, Harris proceeded to a jury trial on April 2nd and 3rd, 2018. Doc. 92, 96, 1:17-cr-00044-SNLJ. The jury found Harris guilty on both counts. Doc. 96, 1:17-cr-00044-SNLJ.

A presentence investigative report ("PSR") was filed, which recommended that the base offense level was 24 based on 97.14 grams of a mixture or substance containing methamphetamine, .53 grams of heroin and 1.91 grams of fentanyl. PSR ¶ 18. Two levels were added due to Harris's possession of the revolver in connection with the drugs. PSR ¶

2

19. Harris received no adjustment for acceptance of responsibility. PSR ¶ 25. The total

offense level was determined to be 26. PSR ¶ 26.

Harris's criminal history is fairly extensive and included countable convictions for

burglary 2nd degree (PSR ¶ 29), felony distribution of a controlled substance near a school

(PSR ¶ 36), felony unlawful possession of a firearm (PSR ¶ 37), misdemeanor destruction

of property (PSR ¶ 38), misdemeanor possession of drug paraphernalia (PSR ¶ 39), felony

possession of a controlled substance in a jail (PSR ¶ 40), driving while license revoked

(PSR ¶ 41), and misdemeanor theft of rented or leased property (PSR ¶ 42). With a total of

16 criminal history points, Harris was assigned a criminal history category of VI. PSR ¶

45. With a total offense level of 26 and a criminal history category of VI, the advisory

sentencing guidelines range was 120-150 months imprisonment. PSR ¶ 84

Harris was sentenced on July 3, 2018, and received a term of incarceration of 150

months on Count I, concurrent to 120 months on Count II, to be followed by concurrent

terms of supervised release. Doc. 108, 1:17-cr-00044-SNLJ. Harris appealed, alleging that

the District Court had denied him a pretrial hearing on evidentiary issues, erred in admitting

hearsay, erred in failing to instruct the jury properly, and erred in imposing a sentence at

the top of the advisory guidelines range. *United States v. Harris*, 964 F.3d 718 (8th Cir.

2020). The Eighth Circuit Court of Appeals upheld the District Court, and Harris petitioned

for a Writ of Certiorari which was denied. Doc. 133, 134, 1:17-cr-00044-SNLJ. Harris then

filed the instant motion under Title 28, United States Code, Section 2255, raising four

grounds for relief. Doc. 1.

3

## II.   LEGAL STANDARD

### A.  Section 2255 Relief

"Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id*. (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Under Section 2255(a), a petitioner may file a motion for post-conviction review on four specified grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States.' (2) 'that the court was without jurisdiction to impose such sentence.' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Martin v. United States*, 150 F. Supp. 3d. 1047, 1049 (W.D. Mo. 2015) (quoting *Hill v. United States*, 368 U.S. 424, 426-27 (1962)); *See also* R. GOVERNING § 2255 PROCEEDINGS 1.  The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

### B.  Ineffective Assistance of Counsel

In order to prevail on a theory of ineffective assistance of counsel, the Movant must demonstrate two separate things; that counsel's representation fell below an objective standard of reasonableness (was constitutionally deficient), and secondly that counsel's deficient performance materially and adversely prejudiced the outcome of the case. *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001). While counsel has a duty to make reasonable investigations and decisions, in determining whether counsel's

performance was deficient, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001).

In order to prove that counsel's error was prejudicial, Movant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability has been described as "a probability sufficient to undermine confidence in the outcome." *Id*. However, the reviewing court need not address the issue of counsel's performance if it determines that the movant "suffered no prejudice from the alleged ineffectiveness." *Pryor v. Norris*, 103 F.3d 710, 712 (8th Cir. 1997).

Counsel cannot be considered to be ineffective for failing to raise issues upon which a defendant would not have prevailed. *United States v. Johnson*, 707 F.2d 317, 320 (8th Cir. 1983). Nor is an attorney under an obligation to pursue an unpromising investigation. *Harvey v. United States*, 850 F.2d 388, 403 (8th Cir. 1988). Although Counsel always has a duty to hold the government to its high burden of proof, there are limitations to a criminal defense.

> "Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade".

*United States v. Chronic*, 104 S.Ct. 2039, 2045, FN 19 (1984).

C. **Need for an Evidentiary Hearing**

28 U.S.C. § 2255 provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under § 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing, "the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).  A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case.  *Id*. at 225-6; *see also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary

hearing.  *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993).  An evidentiary hearing

is unnecessary where the files and records conclusively show petitioner is not entitled to

relief.  *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989).

## III.   DISCUSSION

### A.  <u>Harris Was Not Denied His Right to Present Evidence at Trial</u>

For his first ground for relief Harris alleges that he was deprived of "his fundamental

due process right" to present his case and/or the basic right to be heard in his defense at a

fair trial. Doc. 1, p. 4. Harris claims that he was deprived of this right "based on bad advice

from his counsel at trial." *Id*. Harris alleges that had he testified, that he would have told

the jury that the police did not have probable cause to stop the vehicle he was driving, that

his girlfriend did not consent to the search, and that all of the evidence against him was, in

effect, false. Doc. 1, p. 5.

The record clearly reflects that Harris was not deprived by anyone of his right to

testify in his own defense. Harris was advised of his right to testify, or not, as he chose on

the record before freely and voluntarily waiving his right to testify.

> THE COURT:   Mr. Harris, at this point you can introduce evidence in your case through your lawyer. Of course, as you know, you can take the witness stand, testify and tell your side of the story. You know that, don't you?
>
> HARRIS:   Yes, sir.
>
> THE COURT:   Okay. All right. If you do that, the Government's lawyer will be allowed to cross-examine you. And, in addition, they can impeach your testimony with the introduction of prior criminal convictions, although those prior convictions have already been admitted, in any event, to prove up the allegations that you are a felon -- were a

7

felon in possession of firearms. And, on the other hand, if you decided not to testify, no one can force you or make you testify against yourself. If you decide not to testify, the jury will not be allowed to hold it against you should you decide not to testify. And, in fact, I will read an instruction to the jury advising them of just that. And if you decide not to testify, they cannot hold it against you in their deliberations that you decided not to testify. Now, do you understand all of that?

| | |
|---|---|
| HARRIS: | Yes, sir. |
| THE COURT: | You have the constitutional right not to testify. |
| HARRIS: | Yes, sir. |
| THE COURT: | And if you do testify, do you understand that you're going to be cross-examined? |
| HARRIS: | Yes, sir. |
| THE COURT: | Have you had plenty of time to talk with your lawyer about this decision? |
| HARRIS: | Yes, sir. |
| THE COURT: | Have you come to a decision then? |
| HARRIS: | Yes, sir. |
| THE COURT: | What is your decision then? |
| HARRIS: | I ain't going to testify. |

Trial Tr., Vol. II, pp. 30-31.

The Court then asked Harris's attorney if he had advised his client on this issue and the attorney replied, "I've advised my client not to testify." *Id*. at p. 32. The Court then addressed Harris again.

8

| THE COURT: | Well, this is your free and voluntary decision; is that right? |
| HARRIS: | Yes, sir. |

*Id*.

It is well established that a criminal defendant has a constitutional right to testify on their own behalf. *Rock v. Arkansas*, 483 U.S. 44 (1987). Because the right to testify in one's own behalf is a fundamental constitutional right, only the defendant can waive that right. *Jones v. Barnes*, 463 U.S. 745, 741 (1983). Like any other constitutional right, the right to testify in one's own defense may be voluntarily and knowingly waived. *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir. 1987). Here, the record reflects that Harris was fully advised of his rights concerning the decision as whether to testify or not and voluntarily and knowingly waived that right. Harris's decision not to testify was his, and not his attorney's.

Generally speaking, defense counsel's reasoned decision not to call a witness is a "virtually unchallengeable decision of trial strategy," due in part to the "considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences." *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010)

The Eighth Circuit has found an attorney's advice not to testify to be reasonable trial strategy under very similar circumstances to Harris's. In *Jackson vs. United States*, 956 F.3d 1001 (8th Cir. 2020) the Court found that defense counsel's advice to Jackson not to testify was reasonable trial strategy, and thus not ineffective assistance of counsel, where

9

Jackson knew that he could testify, counsel discouraged him testifying due to the risk of cross examination, and Jackson told the Court that he had decided not to testify. *Id*. at 1007-1008.

Additionally, in order for a counsel's performance to be constitutionally ineffective, it must be objectively unreasonable and result in actual prejudice. *Forsyth v. Ault*, 537 F.3d 887, 891 (8th Cir. 2008). "Prejudice exists only if there is a reasonable probability that the outcome would have been different had counsel's performance been adequate." *Id*.

Encouraging Harris not to take the stand in his own defense was in no way objectively unreasonable under the circumstances. The evidence against Harris was overwhelming. He was caught with the drugs and revolver within mere inches of where he was seated in the car, initially lied about his possession of those items, then changed his mind and confessed on video. In addition, Harris had four prior felony convictions that were available for purposes of impeachment and/or FRE 404(b) evidence: Burglary Second (PSR ¶ 29), Distribution of a Controlled Substance Near a School (PSR ¶ 36), Unlawful Possession of a Firearm (PSR ¶ 37), and Possession of a Controlled Substance in a Jail (PSR ¶ 40). It is difficult to believe that Harris would have been a credible witness in this situation, or that his denials on the stand would have resulted in a reasonable probability of a different outcome other than conviction.

Finally, many of the things which Harris wished to talk about—such as the validity of his arrest, the search of the vehicle and the voluntariness of his confession—were matters which were not properly brought before the jury, and which were resolved against him during pretrial motions. The other matters of which he complains of not being able to

10

personally present, namely his issues with the chain of custody and minor errors or inconsistencies in the police reports, were amply addressed by his attorney in cross examination.

The record clearly reflects that Harris freely and voluntarily waived his right to testify and that his attorney's advice to do so was clearly objectively reasonable in the face of the evidence and Harris' criminal history. This ground will therefore be denied without any need of an evidentiary hearing.

### B. **Harris Did Not Receive Ineffective Assistance of Counsel Concerning Chain of Custody at Trial**

In Harris's second ground for relief, he alleges that his trial counsel was ineffective for failing to investigate why there were "two sets of evidence" produced at trial. Doc. 1, p. 6. Harris alleges that Sikeston Police Officers seized a "black .38 handgun, 101.34 grams of methamphetamine, 3 grams of crack cocaine, and scales." *Id*. Harris goes on to allege that the government produced as evidence at trial a "silver .32 handgun, 94 grams of methamphetamine, scales, and 3 grams of heroin with fentanyl." *Id*. Harris suggests that the guns could have been switched and some of the drugs could have been stolen by one of the officers. Doc. 1, p. 7. Harris proffers no information to support this theory, however.

At trial, the government presented evidence concerning the chain of custody, which the jury accepted as being adequate to prove that the gun and drugs seized from Harris were the same items of evidence presented at trial. Detective Mario Whitney, who first observed the revolver in the driver's side door pocket of the vehicle Harris was driving, seized the gun, rendered it safe and secured it in one of the patrol cars at the scene. Trial

11

Tr., Vol. I, pp. 119-112. Detective David McKnight, the Police Department's Evidence Technician, removed the gun from the police car and maintained exclusive control over it until the morning of trial, even during ATF Special Agent John Taylor's examination of it for interstate nexus purposes. Trial Tr., Vol. I, pp. 119-112. Both Whitney and McKnight identified the revolver, Government Exhibit No. 1, as being the same gun that was recovered from Harris. Trial Tr., Vol. I, pp. 115; Trial Tr., Vol. I, p. 198.

Likewise, Whitney secured the drugs in the same patrol car and transferred them to McKnight. Trial Tr., Vol. I, pp. 109-112. Detective McKnight processed the drugs, securely kept them and personally transferred them to the crime lab. Trial Tr., Vol. I, p. 197. The forensic chemist confirmed that they were still sealed and untampered with at the time she began her analysis. Trial Tr., Vol. I, pp. 234-235.

Harris did raise the chain of custody issue prematurely before trial. Doc. 42, 1:17-cr-00044-SNLJ. Contrary to Harris' contentions his attorney did investigate and attack the chain of custody. Detective Mario Whitney, who removed the revolver and the drugs, was cross examined about the location in which the gun was discovered, whether it could have shifted in the door pocket and the discrepancy in the reports about the caliber. Trial Tr., Vol. I, pp. 125-129. Harris's counsel also cross-examined Whitney about the hard rock material field testing for cocaine, but the lab concluding that it was Heroin mixed with fentanyl. Counsel also cross- examined Detective McKnight who admitted that he had made an error in writing down one digit of the serial number of the gun as well as the caliber. Trial Tr., Vol. I, pp. 210-211. ATF Special Agent John Taylor indicated that the markings on the gun were "very light and difficult to discern" which apparently led to the

confusion. Trial Tr., Vol. I, p. 219.

Harris's defense at trial was not that he possessed a different gun, or slightly more drugs than were produced in evidence. Harris's attorney conceded at trial that those items were in the vehicle, but denied that he knowingly possessed them, a theory which the jury clearly rejected, along with his contention that he had falsely confessed. Harris' counsel performed in an objectively reasonable manner by attempting to inject doubt about those issues, even though that was not a main theme of the defense. The evidence presented at trial however indicated established that the chain of custody was in fact good.

Harris clearly did not receive ineffective assistance of counsel in terms of the chain of custody issue that he raised at trial, and this ground will be dismissed without the necessity of an evidentiary hearing as well.

C. **The Government Did Not Fail to Provide Impeachment Evidence**

For Harris's third ground for relief, he alleges that the Government violated his rights by failing to disclose impeachment information about two witnesses, Detective Penrod and Captain Cooper of the Sikeston Police Department.

Harris alleges that prior to the trial and before Penrod had worked for the Sikeston Police Department, Penrod "was under investigation and suspended for stealing from the Benton Sheriff's Department's evidence room - drugs in particular." Doc. 1, p. 9. Harris is unclear as to whether he means the Benton County Sheriff's Department in west central Missouri, or the Scott County Sheriff's Department in Benton, Missouri. Either way, Harris's complaint is totally without merit.

Harris makes the totally unsupported allegation that Detective Penrod was suspected

of taking drugs in another case. Harris not only offers absolutely no proof of this allegation, but he also offers no indication of how he supposedly came into possession of this "information." This is clearly the type of conclusory allegation to which the Court is not required to give weight. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). Combined with Harris's obvious self-interest in not going back to prison, his record of felony convictions, and the fact that he told two different, and mutually exclusive accounts concerning the drugs during the investigation, Harris's credibility in term of this allegation is non-existent.

Nor does Harris's unmerited attack on Detective Penrod's character even make sense in the context of the § 2255 motion. Harris suggests that Penrod stole a small amount of the drugs he was apprehended with and complains that he did the field test that erroneously showed that Harris's heroin was cocaine. Harris states that since Penrod did the field test on the drugs that were seized "Mr. Penrod's testimony was key to convincing the jury of Mr. Harris's guilt." Doc. 1, pp. 9-10.

The evidence presented at trial clearly established that none of the officers had much opportunity to have taken some of the drugs even in the unlikely instance that they would have had the inclination to do so. In the unlikely event that someone had stolen a small amount of Harris's illegal drugs at the scene, that simply would not absolve him from the guilt of possessing it in the first place.

Likewise, Harris ignores the fact that everyone agreed that the field test mistakenly identified Harris's heroin, which was mixed with fentanyl, as a different illegal drug, namely cocaine. Harris also fails to explain how that fact was "key" to the jury's decision

14

to convict him for possession of a third illegal drug methamphetamine. Harris was not charged with the possession of heroin, fentanyl, or cocaine, only the methamphetamine. Doc. 1, 1:17-cr-00044-SNLJ. Harris's final spurious allegation in this respect is that the Government should have provided impeachment information about Captain Cooper, who after Harris had been convicted and sentenced, was tragically involved in a fatal traffic crash and has been charged with DWI resulting in the death of another, as well as related charges.[1] However, Harris admits that this incident occurred subsequent to his arrest, trial and sentencing, but claims that "…it has been said that Captain Cooper had a drinking problem." Doc. 1, p. 10.

Again, Harris fails to explain how he came by this "knowledge," nor does he provide any evidence that Cooper was drinking either at the time of Harris's arrest, or during the trial, such as would affect Cooper's credibility as a witness.

Harris's allegations as to this ground for relief are clearly insufficient on their face and will be dismissed without the necessity of an evidentiary hearing.

### D. **Harris Did Not Receive Ineffective Assistance of Counsel on Appeal**

Harris's final ground for relief is that he received ineffective assistance of appellate counsel when she failed to appeal "the fact that he was sentenced based on the guidelines for pure methamphetamine" and for not challenging the chain of custody issues. Doc. 1, p. 11. Harris's first contention, that he was sentenced under the pure meth guidelines which "subjected him to a higher minimum mandatory of 10-years" (*Id.*), is totally without merit.

---

[1] *State of Missouri v. Andrew Cooper*, Case No. 21BT-CR00223.

Harris was charged and convicted of possessing fifty grams or more of a mixture or substance containing methamphetamine. Doc. 1, 1:17-cr-00044-SNLJ. The normal range of imprisonment for that offense is not less than five, nor more than 40 years. 21 U.S.C. § 841(b)(1)(B)(viii). Due to Harris's prior felony drug convictions, the government filed a notice under 21 U.S.C. § 851, which increased the penalty range to not less than 10 years, nor more than life incarnation. Doc. 81, 1:17-cr-00044-SNLJ.

Harris's base offense level was determined to be 24 based on the quantity of drugs. PSR ¶ 18. Although the Probation Officer correctly conducted a drug equivalence calculation to account for the small amounts of heroin and fentanyl (*Id*.), the addition of those drugs did not alter the offense level for the methamphetamine mixture for which Harris was convicted. Under U.S.S.G. § 2D1.1(c)(8), an offense involving at least 50 grams, but less than 200 grams of a mixture of substance containing methamphetamine results in a base offense level of 24. Had, as Harris claims, his offense level been determined based upon actual methamphetamine, the offense level would have been 30 under U.S.S.G. § 2D1.1(c)(5). Harris's contention that he was sentenced under the wrong guideline is totally without merit.

Harris also alleges that his appellate counsel was ineffective for failing to advance his totally unsupported allegations that the police switched the evidence against him. The evidence at trial established a good chain of custody, as well as explained the minor errors in the police reports concerning the caliber and serial number of the revolver. Both the jury, who convicted Harris of these crimes, and the District Court who denied Harris's motion for directed verdict were convinced that the evidence, which would include the chain of

16

custody, proved Harris guilty beyond a reasonable doubt. Counsel cannot be considered to be ineffective for failing to raise issues upon which a defendant would not have prevailed. *United States v. Johnson*, 707 F.2d 317, 320 (8th Cir. 1983).

Here, there is no evidence that Harris's counsel failed to act in an objectively reasonable manner in terms of deciding which issues to take up on appeal. Nor is there any evidence that Harris was prejudiced in that respect. As such, this ground for relief will be denied without the necessity for an evidentiary hearing as well.

## VI.    CONCLUSION

For the foregoing reasons, this Court will deny Harris's § 2255 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Hudson has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 27th day of November, 2024.

 

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

17